IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.   18 CV 62870

BRYLAN LEE WHATLEY

       Plaintiff,

v.

ESPORTS ENTERTAINMENT GROUP, INC.,
f/k/a VGAMBLING, INC.,

       Defendant.
_____/

### FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Brylan Lee Whatley ("Whatley") and complaints of Defendant Esports Entertainment Group, Inc., ("Esports"), f/k/a Vgambling, Inc., and says:

### PARTIES, JURISDICTION, VENUE

1. This is a matter for enforcement of an agreement between the parties.
2. This action is for damages in excess of $75,000.00.
3. This Court has diversity jurisdiction pursuant to 28 USC s. 1332.  Venue is proper in this pursuant to U.S.C. s. 1391(b)(3).

### FACTS

4. Esports is a publicly traded Nevada Corporation operating out of the British Virgin Islands.  Esports offers its stock for sale throughout the United States and within the State of Florida, and therefore does business in the State of Florida.[1]

---

[1] As noted, Esports is the new name of VGambling, Inc.  For simplicity, the company will be referred to as "Esports" throughout this complaint without regard for the name under which it operated at the time instances noted in this complaint occurred.

5. Whatley is a U.S. Citizen who resides in Colombia. Whatley, and others working on Whatley's behalf under the agreement that underlies this suit maintain and utilize an office in the State of Florida.

6. On March 22, 2017, Whatley and Esports (under its prior name, VGambling), entered into a Consulting Agreement.

7. The Consulting Agreement called for Whatley to act as a finder, and to assist Esports by locating investors willing to invest funds in Esports. See Exhibit A.

8. The Consulting Agreement called for Whatley to be paid a 10% fee for any funds ultimately raised as a result of his efforts. Additionally, it called for delivery of 100,000.00 Esports shares.

9. In May 2016, Grant Johnson, president of Esports, specifically ratified the agreement by attaching what he referred to as a "signed" copy of the agreement to an email that read "Here is a signed copy of the consulting agreement let me know if you require any of my time, happy hunting". See Exhibit B. Unfortunately, the copy attached to the email did not have a signed agreement attached; however, this was not noticed until much later, at which time Esports refused to provide a signed copy of the Consulting Agreement.

10. Esports did, in fact, raise over $1,850,000.00 from a firm which was introduced by Whatley and Whatley's colleagues who were working on Whatley's behalf. Whatley and individuals working on Whatley's behalf were the procuring cause of this fund raise for Esports.

11. Accordingly, Whatley is owed payment of a minimum of $185,000.00 and shares in accordance with the Consulting Agreement.

## COUNT 1 – BREACH OF CONTRACT

12. Paragraphs 1 through 11 are re-averred as if set forth herein.
13. A contract, called the Consulting Agreement, existed between Whatley and Esports.
14. Whatley fully performed as required under the Consulting Agreement
15. Esports breached the Consulting Agreement by failing to pay Whatley as required by the contract.

16. As a result of this breach, Whatley was damaged.

## COUNT 2 – QUANTUM MERUIT

### (Alternative to Count 1)

17. Paragraphs 1 through 11 are re-averred as if set forth herein.
18. In the event the Court finds that there is no enforceable written contract between the parties, Whatley is entitled to recover for his effort in acting as a finder for Esports.
19. Whatley provided finder services to Esports.
20. Esports acquiesced in the provision of the services provided by Whatley.
21. Esports was aware that Whatley expected to be compensated for his efforts.
22. Esports was unjustly enriched as it has not compensated Whatley for the services provided.
23. The value of Whatley's services was in excess of $185,000.00.

WHEREFORE, Plaintiff prays for the following relief from Defendant:

A. With respect to Count 1, damages in the amount of a minimum of $185,000.00, or such amount over $185,000.00 as required under the Consulting Agreement, plus the delivery of 100,000 shares of Esports;

B. Alternatively, with respect to Count 2, an amount equal to 10% of the funds raised by Esports for which Whatley was the procuring cause, plus the delivery of 100,000 shares of Esports;

C. With respect to all counts, prejudgment and post-judgment interest at the legal rate.

D. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff further demands trial by JURY on all claims so triable.

Respectfully submitted,

s/ J. Andrew Fine_____

J. Andrew Fine
Florida Bar No. 125784
Marshall Socarras Grant PL
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Tel: 561-361-1000
afine@msglaw.com

## **CONSULTING AGREEMENT**

This Consulting Agreement (the "Agreement") is made as of_____, 2016 ("Effective Date") between **Brylan Lee Whatley.** (the "Consultant"), and **VGambling, Inc.** (the "Company"). The Company and the Consultant are collectively herein referred to as the "Parties".

WITNESSETH

WHEREAS, the Consultant is desirous of providing the Company with consulting services on terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements hereinafter set forth, the Parties agree as follows:

In consideration of the mutual promises, covenants and agreements hereinafter set forth, the Parties agree as follows:

1.      Term.  The term of this Agreement shall be six (6) months from the Effective Date. Thereafter, it shall automatically renew for six (6) month terms. However, after the initial six (6) month term, this Agreement may be terminated on thirty (30) days written notice by either of the Party. Upon any termination of expiration of this agreement, The Consultant will be entitled to payment of all fees and issuance of all warrants and cash owed by the exercise of the Investor's warrants accrued in accordance with the terms of this Agreement and payment of all out-of-pocket expenses as described above. In addition, (a) if at any time during the 2 year period commencing immediately after the termination or expiration of this Agreement, the Company consummates any Transaction or Transactions with Investors identified by The Consultant, or (b) if at any time during the 2 year period commencing immediately after the termination or expiration, the Company enters into a written agreement(s) with respect to a Transaction or Transactions with Investors identified by The Consultant and such Transaction or Transactions are consummated on substantially the terms contained in such written agreement(s) within 4 years after termination or expiration of this Agreement, then The Consultant in addition to any expense reimbursement due, shall be entitled to payment in full of the compensation described in Section 3 of this Agreement with respect to such Transaction or Transactions. Upon the written request of the Company, after termination or expiration of this Agreement, The Consultant shall provide to the Company a list of the Investors identified by The Consultant within thirty business days of such request.

2.      Services.

2.1     Services.  During the term of this Agreement, the Consultant shall assist and advise the Company in obtaining financing, acting as a finder, and shall provide other advisory due diligence services. With regard to obtaining financing, Consultant shall focus on the referral of institutional financing partners (e.g., Private Equity Firms, Hedge Funds and Venture Capital Firms investing in public companies, and Substantial Pools of Capital), with the investment of potential financing partners to be in the form of Common Stock (with and without Warrants) and/or Convertible Securities/Debentures.

2.2     Standard of Care.  The Consultant shall perform all Services in a timely and professional manner in accordance with the highest industry standards. The Consultant represents that it is authorized to enter into this Agreement and that he is not bound by any commitments or obligations which would preclude

EXHIBIT A

it from  performing such Services or any of its obligations under this Agreement.

3. Compensation.

    3.1    Fee. At Closing(s) of Financing(s) (i.e., the date when capital is received by the Company),  Consultant will receive, via wire transfer, a cash fee based on a percentage, as per table below, of the total capital provided to the  Company by Investor(s) introduced to the Company by Consultant.

| Any Equity Investment* | 10.0% Cash (USD) |
| Any Debt less than Ten Million USD | 5.0% Cash (USD) |
| Any Debt greater than Ten Million USD | 2.5% Cash (USD) |

    3.2    Out-of-pocket expenses. The Consultant shall be reimbursed for reasonable out-of-pocket  expenses incurred in connection with the Consultant's performance of Services. All such expenses must be  approved in advance and in writing by the Company prior to the Consultant incurring such expenses.

    3.3    Disputes. The Company shall pay each invoice within thirty (30) days of receipt of such invoice by the Company, unless the Company disputes the invoice. The Company shall, within thirty (30) days after such  invoice is received, notify the Consultant that it disputes the accuracy or appropriateness of the invoice and  specify the item in such invoice which the Company considers to be inaccurate or inappropriate.

    3.4    Taxes. The Consultant shall be responsible for and pay all federal, state and local taxes that arise in connection with the Services performed hereunder.

    3.5    Consultancy Equity Fee. The Consultant shall receive from The Company, One Hundred Thousand (100,000) common shares to be issued upon the agreement date as part of the start of Consultancy Services.

4. Confidential Information.

    4.1    The term "Confidential Information" means any and all business and technical information, samples, formulas, data and written and verbal descriptions relating to the Company or any of its subsidiaries disclosed to the Consultant.

    4.2    The Confidential Information is being disclosed by the Company to the Consultant in order for Consultant to provide the Services hereunder.

    4.3    The Consultant shall not use the Confidential Information for any other purpose other than for the purpose of providing the Services pursuant to this Agreement.

    4.4    All Confidential Information disclosed by the Company to the Consultant shall remain the property of the Company and shall not be disclosed by Consultant to anyone, without prior written permission of  the Company. Such Confidential Information shall be promptly returned to the Company within thirty (30) days  after a written request by the Company, except that Consultant shall have the right to retain one (1) copy of the  Company's Confidential Information so that any continuing obligations to the Company may be determined.

4.5     Confidential Information does not include any information which: (a) at the time of disclosure was in the public domain, (b) after disclosure becomes part of the public domain, except through breach of this Agreement by the Consultant, (c) the Consultant can demonstrate by his written records was in the Consultant's possession prior to the time of disclosure by or on behalf of the Company hereunder, and was not acquired directly or indirectly from the Company, (d) becomes available to the Consultant from a third party which, to the knowledge of Consultant, is not legally prohibited from disclosing such Confidential Information, or (e) the Consultant can demonstrate by his written records was developed by or for the Consultant independently of the disclosure of Confidential Information by the Company.

4.6     Consultant's obligations regarding Confidential Information shall survive termination of this Agreement and remain enforceable for a period of 5 years following termination of this Agreement.

5.     Publicity.  The Consultant shall not refer to the existence of this Agreement in any press release, advertising or other public statement, written or oral, without the prior written consent of the Company.

6.     Ownership.  The Company shall have complete and exclusive ownership of all work products, as well as all materials (and all intellectual property rights in and to all of the foregoing) (collectively, "Work Product"), produced by Consultant under this Agreement.  In furtherance of the foregoing, the Consultant hereby irrevocably assigns to the Company all right, title and interest in and to such Work Product. The Consultant agrees to execute all documents deemed reasonably necessary by the Company to evidence or perfect the foregoing assignment.

7.     Patent Rights.  No right or license, either expressed or implied, under any licensing agreement, patent or proprietary right of the Company is granted hereunder.  Any information or technology, including but not limited to data, products, processes, formulations, machinery and apparatus, and uses thereof, which Consultant may develop, improve, discover or invent as a result of the Services (the "Technology") shall be considered to be "Work Product" and shall become the property of the Company.  The Consultant shall immediately disclose any Technology to the Company.  The Consultant shall also execute any other documents reasonably requested by the Company related to the Technology and the Work Product, including documents necessary for patent or regulatory filings and cooperate with the Company after the filing of patent or regulatory documents for as long as necessary to vest the rights to the Technology in the Company, including execution of necessary documents in subsequent continuation, continuation-in-part, divisional, international, and foreign patent applications.

8.     Return of Materials.  Upon the expiration or termination of this Agreement, whichever occurs first, the Consultant shall transfer to the Company all Work Product, Technology, work in progress, property, Confidential Information and all other materials in the Consultant's possession or control that are the property of the Company.

9.     Indemnification.

(a) By the Company. The Company shall defend, indemnify and hold the Consultant harmless from and against any and all claims, losses, liabilities, damages, royalties, costs and expenses (including, but not limited to, reasonable attorneys' fees) (collectively, the "Liabilities") arising out of or from the Company's negligent or more culpable act or omission (including any breach of its obligations hereunder) in connection with the performance of this Agreement.

(b) <u>By Consultant</u>. The Consultant shall defend, indemnify and hold harmless the Company from and against any and all Liabilities arising out of or from the Consultant's negligent or more culpable act or omission (including any breach of his obligations hereunder) in connection with the performance of this Agreement.

10.     <u>Independent Contractor</u>.  The Consultant shall perform all of Consultant's obligations under this Agreement as an independent contractor and not as an agent, employee or representative of the Company. The Consultant shall not participate in any insurance programs or benefits including, but not limited to, workers' compensation insurance, disability insurance or any other employee benefits available to the Company's employees.

11.     <u>Assignment</u>.  The Consultant shall not assign this Agreement or the performance of Consultant's obligations hereunder, without the prior written consent of the Company.

12.     <u>Notices.</u> Any notice consent, authorization of other communication to be given hereunder shall be in writing and shall be deemed duly given and received when delivered personally, when transmitted by fax, three days after being mailed by first class mail, or one day after being sent by a nationally recognized overnight delivery service, charges and postage prepaid, properly addressed to the party to receive such notice, as the following address or fax number (or such other address or fax number as shall hereafter be specified by such party by like notice):

    a. *If to the Company*:
    VGambling, Inc.
    112 North Curry Street
    Carson City, NV 89703                Telephone: (905) 580-2978
    Attn: Grant Johnson                   Email: _____

    b. *If to the Consultant*:
    Brylan Lee Whatley
    8186 S. Tempe Ct.
    Aurora, Co                                Email: whatley@valor.is
    Attn: Brylan Whatley                  Telephone: +57-3152991083

13.     <u>Counterparts.</u> This Agreement may be executed in one or more counterparts each of which shall for all purposes be deemed to be an original and all of which shall constitute one and the same instrument. Facsimile signatures shall be treated as original signatures.

14.     <u>Severability</u>.  If for any reason a court of competent jurisdiction finds any provision of this Agreement, or portion thereof, to be unenforceable, the remainder of this Agreement shall continue in full force and effect.

15.     <u>Relationship of Parties</u>. Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee or joint venture relationship between the Parties. No Party shall incur any debts or make any commitments for the other, except to the extent, if at all, specifically provided herein.

16.     <u>Waiver.</u> A waiver by either party of any of the terms and conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach hereof. All rights, remedies, undertakings, obligations and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking,

obligation or  agreement of either party.

17.     Entire Agreement.  This Agreement sets forth the entire agreement between the parties with respect to  the specific matters contained herein.  This Agreement may be modified or amended only in writing signed by   the parties. The descriptive headings of each numbered section of this Agreement are for convenience only and   are not for use in the construction and/or interpretation of this Agreement.

18.     Applicable Law.  This Agreement shall be deemed to have been made in the State of New York and shall be construed and governed in accordance with the laws of the State of New York without regard to the conflicts of laws rules of such jurisdiction. The parties hereby irrevocably consent to the jurisdiction of the courts   located in the State of New York.

**IN WITNESS WHEREOF**, the Parties have caused their respective signature page to this Agreement  to be duly executed as of the date first written above.

**Brylan Lee whatley**                                   **VGambling, Inc.**

By: _____                 By: _____

Brylan Lee Whatley                                              Grant Johnson, CEO

Additionally herein below are listed mutually accepted Referred institutional financing partners (e.g., Private Equity Firms, Hedge Funds and Venture Capital Firms investing in public companies, and Substantial Pools of Capital), of whom fall under this agreement as introduced by Consultant, and any and all financing done with these partners, The Company is liable of all fees listed in Consultant Agreement section 3 of compensation.

- Karen K Ard of Littleton Colorado, and associated firms she has worked with, Equinox Securities and Monarch Bay LLC.
- Spencer Edwards, of Denver Colorado

Accepted By:

_____                    _____
Brylan Whatley                                                                  VGambling, Inc.

-------- Original message --------
From: "grant vgambling.net" <grant@vgambling.net>
Date: 05/05/2016 9:06 AM (GMT-05:00)
To: gene <gene@geiger.bz>
Subject: agreement

Morning Gene

Here is the signed copy of the consulting agreement let me know if you require any of my time, happy hunting.

Regards

Grant R. Johnson
President
VGambling Inc.
www.vgambling.net
grant@vgambling.net
skype grant.r.johnson60

# EXHIBIT B